## IMPERIAL SUGAR CO. v. BRIGHT STAR S. S. CO.

A. D. No. 1878.

United States District Court
S. D. Texas, Galveston Division.

June 2, 1950.

Baker, Botts, Andrews & Parish (Denman Moody), of Houston, Tex., and Deutsch, Kerrigan & Stiles (Harry F. Stiles, Jr.), of New Orleans, La., for libelant.

Lockhart, Hughes & Watson (Edward W. Watson), of Galveston, Tex., for respondent.

KENNERLY, Chief Judge.

This is a suit in admiralty by Libellant against the Steamship Captain John and her owner, Bright Star Steamship Company, to recover damages caused by water, etc., to a shipment of Cuban Raw Sugar of the 1948 crop, shipped from the ports Antilla and Caibarian, Cuba, on the Steamship Captain John on or about July 7 and July 16, 1948, to the port of Galveston, Texas. The consignor was M. Golodetz & Company of New York, and it was consigned Shipper's Order. Libellant prior to the beginning of the unloading of such shipment at Galveston on July 22, 1948, became the owner thereof. The sugar was loaded onto the Steamship at the named ports in Cuba, transported to Galveston, and while it was being unloaded, it developed and was discovered that some of the shipment stored in Holds 1 and 2 was injured by water. Libellant sues to recover damages for such injury.

### Findings of Fact

(a) Photostatic copies of Charter Party and six Bills of Lading upon which the sugar was shipped are attached to Respondent's Answer filed February 28, 1950, to which reference is made. In Respondent's Brief, it is correctly said:

"The Bill of Lading under which Libelant claims (Respondent's Exhibit 3) expressly states that the shipment was subject to all exemptions from liability contained in the Harter Act [46 U.S.C.A. § 190 et seq.] The Bill of Lading further recites that it is subject to all conditions and exceptions of the covering charter (Libelant's Exhibit 4), and that charter contains a 'Clause Paramount' entitling the owner of the vessel to all privileges, rights and immunities as contained in Sections 3 (6), 4 and 11 of the Carriage of Goods by Sea Act [46 U.S.C.A. §§ 1303(6), 1304, 1310]."

(b) The following statement in Respondent's Brief correctly states the cause of the sugar in Holds 1 and 2 becoming wet and being damaged:

"That the damage was caused by fresh water entering No. 1 Hold by way of a break in the pipe leading through that Hold and connecting the fore-peak tank to the engine room.

"That the source of this water was fresh water being taken from the dock through the engine-room intake for the purpose of filling engine-room tanks and domestic tanks.

"That no part of this water would have entered the pipe leading to the fore-peak and thereby reached the cargo except for the further fact that the valve to this pipe, in the engine room manifold, was jammed partly open by the presence of a nut wedged between the valve and the valve seat, inside of the valve housing.

"That the water damage so caused would have been confined to the No. 1 Hold excepting that in the bulkhead between No. 1 Hold and No. 2 Hold, and just above the tank top, there was an open hole about the size of a rivet."

(c) It does not seem necessary to find whether the break in the pipe in Hold No. 1 was from the pipe being struck in prior loading or unloading of cargo, or by the vibrations of the vessel, or otherwise. The evidence is convincing and I find that the break in the pipe was due to the fact and caused by the fact that the pipe had been previously broken or that it had been for some time and was at the time the sugar was loaded so old, thin, unsound, weak, rusty, and corroded that it could not and did not withstand the ordinary wear and tear of use and the ordinary vibrations of the ship. This rendered the Steamship unseaworthy at and before the times such sugar was loaded, and she continued to be unseaworthy. Also it clearly appears that it was negligence on the part of those in charge of such Steamship and her owners for the pipe to be in that condition.

(d) The presence of the nut wedged between the valve and the valve seat which held the pipe partly open, as hereinbefore stated, was due to the negligence of those in charge of the Captain John and her owners and their failure to exercise precaution and to use diligence to prevent such nut from becoming wedged as it was. The wedging of the nut rendered such Steamship unseaworthy.

(e) I also find that those in charge of the Captain John and her owners were negligent in failing to make such Steamship seaworthy at and before the beginning of the voyage, in failing to properly inspect such steamship before the beginning of the voyage, and in failing to discover the condition of the pipe in question, or if discovered, in failing to repair same. It is not clear when the nut became wedged as stated, but those in charge of the Captain John and her owners should have prevented it becoming wedged, or should have discovered the nut soon after it became wedged, and were negligent in not doing so.

(f) It was also negligence on the part of those in charge of such Steamship and her owners to permit the hole to be in the bulkhead between Holds 1 and 2, allowing the water to pass from Hold 1 into Hold 2. Such Steamship was thereby rendered unseaworthy.

## Conclusions of Law.

1: Under the foregoing Findings, I conclude that Libellant is entitled to recover damages for the injury to such sugar.

Judgment for Libellant. Let appropriate Decree be drawn and presented.